(166 App. Div. 316)

### TOWN OF EASTON v. CANAL BOARD et al.

(Supreme Court, Appellate Division, Third Department. March 3, 1915.)

1. STATES ⟨⟩191—SUIT AGAINST—CONSENT.
    An action to compel a canal board to restore a bridge over the Barge Canal is not a suit against the state, requiring its consent.
    [Ed. Note.—For other cases, see States, Cent. Dig. §§ 179–184; Dec. Dig. ⟨⟩191.]

2. CANALS ⟨⟩17—RESTORING BRIDGES—MANNER OF WORK—DUTY OF BOARD.
    Where, under the Barge Canal Act (Laws 1903, c. 147), a portion of a steel bridge is taken, it is requiring too much of the canal board to hold that the whole bridge must conform for its entire length in elevation, style, material, and construction with the steel spans remaining, since reasonable adaptation to the use required is sufficient.
    [Ed. Note.—For other cases, see Canals, Cent. Dig. § 25; Dec. Dig. ⟨⟩17.]

    Howard, J., dissenting in part.

Appeal from Trial and Special Term, Washington County.

Action by the Town of Easton against the Canal Board, its members, and others. From a judgment for plaintiff, defendants other than the Town of Saratoga appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

James A. Parsons, Atty. Gen., for appellants.
Rogers & Sawyer, of Hudson Falls, for respondent town of Easton.
William S. Ostrander, of Saratoga Springs, for defendant town of Saratoga.

SMITH, P. J. Between the town of Easton, in Washington county, and the town of Saratoga, in Saratoga county, the Hudson river sep-

arates into two channels, which are separated by an island. Between the two towns a bridge has for many years existed from the town of Easton to this island, and extending therefrom to the town of Saratoga. Under the Barge Canal Act the eastern channel of the Hudson at this place was appropriated for the Barge Canal. The facts material to the questions here raised are recited in the findings of fact 27 to 37, inclusive.

"(27) That said alterations consisted of removing four piers and five spans of said bridge, leaving four spans remaining, of which three were on the Easton side and one on the island side of said bridge; two new piers, one on each side of said Barge Canal channel, and which were about four feet higher than the piers that were removed, were built; a steel span was built from one new pier to the other, which covered the length of three of the removed trusses and a part of the length of each of two other trusses; the spans on both ends of and next to the steel span were removed, and in place thereof spans on an incline and made of used timbers were inserted; the remaining spans were raised, so that on both sides of said steel span the bridge was on a grade from the abutments on the shores to said steel span.

"(28) That the raising of said portions of said bridge was done by jacking up the ends of the trusses one at a time and putting blocking under them.

"(29) That the raising of said portions of said bridge in said manner caused the said portions of said bridge to be badly warped out of shape, and strained and weakened said bridge, and caused the same to be badly out of alignment.

"(30) That the grade of said portions of said bridge was about 5 per cent.

"(31) That when the wooden trusses were raised to obtain the slope to the steel span, some of the piers were built up with wooden blocking, and not with masonry, and such construction was insecure and unsafe.

"(32) That said grade or slope created an unequal stress and weakened said bridge.

"(33) That after the completion of said alterations the said bridge over said east channel was by reason of said alterations never suitable or safe for public use.

"(34) That after the completion of said alterations neither said bridge, nor the wooden parts thereof wholly built by the contractors to replace portions of the bridge removed by them, were capable of carrying with safety over 2½ tons.

"(35) That after the completion of said alterations, and on the 10th day of March, 1913, said bridge was inspected by Resident Engineer Holmes, who reported to the state commission of highways that said bridge was in a very unsafe condition, whereupon, and on the 2d day of May, 1913, said bridge was condemned by the said commission.

"(36) That after the completion of said alterations, and before the condemnation of said bridge by the state commission of highways, a needle beam of the sloping span, which was wholly constructed by said contractors to replace portions of the bridge removed just east of the steel span, broke while a load of gravel weighing about 3,000 pounds was being drawn over it.

"(37) That after the completion of said alterations one of the beams in the sloping part of the said bridge between said steel span and said island, which had been wholly constructed by the contractors to replace portions of the bridge removed by them, broke when a load of irons was being drawn over it."

The judgment appealed from directs the defendants constituting the canal board "to complete the building of such new bridge." From this judgment the canal board and its constituent members appeal.

[1] It is first urged that the court is without jurisdiction to sustain this action because of lack of consent of the state to be thus sued. But the state is not being sued. These officers of the state are required by the court simply to execute the direction of the statute to build new bridges wherever the same may be required. Of such actions the court

frequently takes cognizance, and these officers might have been mandamused to perform their duty. We have no doubt of the jurisdiction of the court to entertain either a writ of mandamus or an action for a mandatory injunction—the action here under consideration. Rolston v. Missouri Fund Commissioners, 120 U. S. 390, 7 Sup. Ct. 599, 30 L. Ed. 721.

The sole remaining question is one of fact, whether the bridge has been substantially restored to its former condition of safety and endurance. The court has found that it has not.

We are of opinion that the evidence sustains the conclusion reached by the trial judge and that the judgment should be affirmed.

[2] There is one finding of fact, however, which probably is to an extent interpretative of this judgment, to which we cannot fully agree. The forty-third finding of fact is as follows:

"(43) That a safe, suitable, and proper bridge between said town of Easton and said island would be one that conformed for its entire length, in elevation, style, material, and construction, with said steel spans."

This requirement, in my judgment, exceeds that of the statute. The canal board is not directed as to the material to be used in the construction of a bridge, or to the effect that uniformity must exist therein throughout the whole length of the bridge. The general principle, however, of reasonable adaptation to the use required, would require approaches to the bridge to be made reasonably safe and secure, and probably not less secure than were the approaches to the bridge before interference therewith by the state. I have no doubt that these approaches could be built of wood or other material which would make them substantially safe, and that with such construction the statutory obligations would be fulfilled.

The judgment should therefore be affirmed, with costs. All concur; HOWARD, J., in result, in memorandum.

HOWARD, J. I concur in the result, but not in the rejection of the forty-third finding of fact. I believe that a reasonable interpretation of the law requires uniformity throughout the whole length of new bridges constructed by the state when old ones are razed. The state has no right to generate monstrosities or to breed architectural cripples. It has no right to erect unsymmetrical, unsightly, misshapen structures in the municipalities of the commonwealth, to become blemishes on the landscape, eyesores to the inhabitants.